**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-MD-2311 Honorable Marianne O. Battani |
| IN RE:  AIR CONDITIONING SYSTEMS CASES | |
| This Document Relates To: ALL AUTOMOTIVE DEALER ACTIONS ALL END-PAYOR ACTIONS | 2:13-cv-02702-MOB-MKM; 2:13-cv-02703-MOB-MKM **Oral Argument Requested** |

**PANASONIC CORPORATION AND PANASONIC**
**CORPORATION OF NORTH AMERICA'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINTS**

PLEASE TAKE NOTICE that, by their counsel listed below, Defendants Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic") respectfully move this Court for an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all federal and state law claims against Panasonic brought by Automobile Dealer Plaintiffs and End-Payor Plaintiffs (collectively, "Plaintiffs") in their Consolidated Amended Class Action Complaints ("Complaints") (ECF Nos. 105, 108).

This motion is based on the supporting brief, oral argument of counsel, and such other and further material as the Court may consider.

As required by Local Rule 7.1(a), counsel for Panasonic sought concurrence from counsel for Plaintiffs on June 2 and 5, 2017, via telephone conference.  During those calls, counsel for Panasonic explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Panasonic respectfully request that this Court issue an Order dismissing all federal and state law claims against Panasonic in Plaintiffs' Complaints.

Dated: June 5, 2017

Respectfully submitted,

*/s/  Jeffrey L. Kessler*
Jeffrey L. Kessler
Eva W. Cole
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-4685 (Telephone)
(212) 294-4700 (Facsimile)
jkessler@winston.com
ewcole@winston.com
jamato@winston.com

Brandon W. Duke
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (Telephone)
(713) 651-2700 (Facsimile)
bduke@winston.com

*Counsel for Panasonic Corporation and*
*Panasonic Corporation of North America*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-MD-2311<br>Honorable Marianne O. Battani |
| IN RE:  AIR CONDITIONING SYSTEMS CASES | |
| This Document Relates To:<br><br>ALL AUTOMOTIVE DEALER ACTIONS<br>ALL END-PAYOR ACTIONS | 2:13-cv-02702-MOB-MKM<br>2:13-cv-02703-MOB-MKM<br><br>**Oral Argument Requested** |

**BRIEF IN SUPPORT OF PANASONIC CORPORATION AND PANASONIC CORPORATION OF NORTH AMERICA'S MOTION TO DISMISS THE <u>CONSOLIDATED AMENDED COMPLAINTS</u>**

## STATEMENT OF THE ISSUES PRESENTED

Whether Plaintiffs' Complaints should be dismissed as to Panasonic for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## **STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)

- *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF THE ISSUES PRESENTED ................................................................. i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................. ii

TABLE OF AUTHORITIES ............................................................................................... iv

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

STANDARD OF LAW........................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.   Plaintiffs Do Not Plausibly Allege that Panasonic Participated in the Claimed  Overarching AC Systems Conspiracy ........................................................................ 6

  A.  Plaintiffs Fail to Plausibly Allege an Overarching AC Systems Conspiracy .................... 6

  B.  Plaintiffs Fail to Allege that Panasonic Knowingly Joined an Overarching AC Systems Conspiracy ....................................................................... 10

CONCLUSION.................................................................................................................. 12

CERTIFICATE OF SERVICE .......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................5

*In re Auto. Parts Antitrust Litig. (Fuel Injection Systems)*,
No. 2:12-cv-2203 (E.D. Mich. Jan. 19, 2016) ........................................11

*In re Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) ............... *passim*

*In re Auto. Parts Antitrust Litig. (Wire Harness I)*,
Nos. 2:12-cv-00101, 2:12–cv–00103,
2013 WL 2456585 (E.D. Mich. Jun. 6, 2013) ........................................12

*In re Auto. Parts Antitrust Litig. (Wire Harness II)*,
Nos. 14-14451, 14-cv-00107, 2015 WL 10372435 (E.D. Mich. Dec. 30, 2015) ....................8

*In re Auto. Parts Antitrust Litig. (Wire Harness III)*,
Nos. 14-14451, 14-cv-00107, 2015 WL 10372437 (E.D. Mich. Dec. 30, 2015) ....................8

*In re Auto. Parts Antitrust Litig. (OSS)*,
50 F. Supp. 3d 869 (E.D. Mich. 2014)....................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................5

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) ..............................................................11

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ...............................................................4

*Dahl v. Bain Capital Partners, LLC*,
937 F. Supp. 2d 119 (D. Mass. 2013) ....................................................7

*Felder's Collision Parts, Inc. v. General Motors Co.*,
960 F. Supp. 2d 617 (M.D. La. 2013)....................................................9

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................10

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
647 F. Supp. 2d 1250 (W.D. Wash. 2009).............................................11

iv

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011)................................................................8

*Maple Flooring Mfrs. Ass'n v. United States*,
   268 U.S. 563 (1925)...........................................................................................11

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)............................7

*Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*,
   No. 08–CV–42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)...............................7

*PSKS, Inc. v. Leegin Creative*,
   615 F.3d 412 (5th Cir. 2010) .............................................................................9

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 896 (6th Cir. 2009) .............................................................................7

*United States v. Ashland-Warren, Inc.*,
   537 F. Supp. 433 (M.D. Tenn. 1982)................................................................10

*United States v. Hodges*,
   935 F.2d 766 (6th Cir. 1991) .............................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................12

Fed. R. Evid. 201(b)..................................................................................................4

T. Vakerics, *Antitrust Basics,* § 6.13 (1985)..........................................................10

## INTRODUCTION

Plaintiffs allege a broad conspiracy among multiple defendants to rig bids and fix prices of a wide variety of auto parts that are used to cool the interior environments of vehicles.  Plaintiffs improperly lump these different parts together into an all-encompassing shorthand label called "Air Conditioning Systems" or "AC Systems."  But as the Complaints make clear, the cooling systems for vehicles are varied, complex, and comprised of multiple distinct component parts manufactured by different defendants who do not all compete with one another on the same components.

Panasonic was not named in Plaintiffs' original complaints—and for good reason—because Panasonic did not make or sell such AC Systems or even many of the component parts that could be deemed part of such systems.  In a sleight of hand, Plaintiffs seek to plead around this fatal flaw in their conspiracy claims against Panasonic by contradictorily defining the term "AC Systems" to mean any one of a broad range of automotive parts that are used to cool the environment of a vehicle and the entire system itself.  This, however, is insufficient and does not make it plausible that Panasonic joined a conspiracy regarding AC Systems that Panasonic neither makes nor sells.

Rather than provide any specific allegations that would plausibly support a claim that Panasonic participated in such an overarching AC Systems conspiracy, Plaintiffs' allegations regarding Panasonic are limited to alleged discussions about a single component of a narrow category of AC Systems—compressors for hybrid vehicles—with a single competitor—Denso—in a single year—2007—related to just one OEM's specific RFQ.  Regardless of whether such narrow allegations could support a claim against Panasonic with respect to this single compressor RFQ, they do not come close to supporting any claim against Panasonic for the broad conspiracy involving AC Systems that is alleged in this case.

Indeed, this Court has already recognized that it is implausible to allege that companies who sold only one or two components parts would participate in an overarching conspiracy involving numerous other components parts and systems that they did not manufacture or sell.  *See In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016).  That same reasoning dooms Plaintiffs' implausible attempt to assert an overarching AC Systems conspiracy against Panasonic here.  Simply put, Plaintiffs have no plausible basis to join Panasonic in a case about an alleged AC Systems conspiracy involving numerous different products and components just because Panasonic allegedly engaged in competitive discussions about a single RFQ involving compressors for hybrid vehicles—an individual component that had nothing to do with the overarching conspiracy involving AC Systems for all vehicles sold in the United States nor the numerous other AC System components that comprise those systems asserted in the Complaints.  For these reasons, Plaintiffs' Complaints as to Panasonic should be dismissed.

## STATEMENT OF FACTS

Plaintiffs make the wholly conclusory allegation that Panasonic, along with other Defendants, participated in a "long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Air Conditioning Systems" ("AC Systems").[1]  ADP Compl. ¶ 1; EPP Compl. ¶ 1.  The AC Systems label is used to include a wide swath of automotive components, including "automotive compressors, condensers, HVAC units (typically consisting of a blower motor, actuators, flaps, evaporator, heater core, and filter embedded in a plastic housing), control panels,

---

[1] ADP Second Consol. Am. Class Action Complaint, No. 13-cv-02702 (ECF No. 108) ("ADP Compl."); EPP Consol. Am. Class Action Complaint, No. 13-cv-02703 (ECF No. 116) ("EPP Compl.") (collectively, "Complaints").

sensors, and associated hoses and pipes." ADP Compl. ¶ 3, EPP Compl. ¶ 3.[2]  Illogically, Plaintiffs

seek to apply the term "AC System" to any one of these various and distinct components, even

though they recognize that the different products could be (and, in fact, are) sold separately by

distinct manufacturers.  ADP Compl. ¶ 3; EPP Compl. ¶ 3.  Employing this bizarre definition—

which mixes up all different parts together—Plaintiffs then claim in boilerplate fashion that all

"Defendants" generally "manufacture, market and sell Air Conditioning Systems throughout and

into the United States."  ADP Compl. ¶ 4; EPP Compl. ¶ 4.  But, in Plaintiffs' lexicology, this

simply means that each defendant manufactured and sold at least one such component—in

Panasonic's case, compressors for hybrid vehicles—but not necessarily each of the other parts of

an AC System or AC Systems as a whole.

With respect to Panasonic, the very few specific allegations in the Complaints that even

mention the company either relate to Panasonic Corp.'s plea agreement regarding completely

unrelated component parts having nothing to do with an AC System,[3] or Panasonic's sale of a

---

[2] *Compare* ADP Compl. ¶ 3, *and* EPP Compl. ¶ 3, *with* EPP's Proposed Cons. Am. Compl ¶ 3, No. 13-cv-02703 (ECF No. 38-1) (defining "Automotive Parts" collectively to include "Instrument Panel Clusters, Fuel Senders, Heater Control Panels, Alternators, Windshield Wiper Systems, Radiators, Starters, Ignition Coils, Motor Generators, HID Ballasts, Inverters, Fuel Injection Systems, Power Window Motors, Automatic Transmission Fluid Warmers, Valve Timing Control Devices, Air Conditioning Systems, Windshield Washer Systems, and Spark Plugs").

[3] As alleged in the Complaints, in 2013, Panasonic Corp. pled guilty and paid a "$45.8 million criminal fine for its role in a conspiracy to fix prices of HID ballasts, switches and steering angle sensors."  ADP Compl.¶ 13; EPP Compl. ¶ 13.  In June 2014, Plaintiffs filed separate actions against Panasonic and other defendants related to each of these individual parts, which had nothing to do with any AC Systems.  *See, e.g.,* Consol. Am. Compl., 13-cv-01702, ECF No. 24 (Jun. 13, 2014) (ADPs' complaint related to HID Ballasts); Cons. Am. Compl., 13-cv-017023, ECF No. 9 (Jun. 13, 2014) (EPPs' complaint related to HID Ballasts); Consol. Am. Compl., 13-cv-01603, ECF No. 8 (Jun. 12, 2014) (EPPs' complaint related to Steering Angle Sensors); Consol. Am. Compl., 13-cv-01602, ECF No. 24 (Jun. 20, 2014) (ADPs' complaint related to Steering Angle Sensors); Cons. Am. Compl., 13-cv-01302, ECF No. 23 (Jun. 20, 2014) (ADPs' complaint related to Switches); and Consol. Am. Compl., 13-cv-01303, ECF No. 11 (Jun. 12, 2014) (EPPs' complaint related to Switches).  In April 2015, Panasonic and Plaintiffs agreed to settlements for

3

single component part—a compressor that can be used as part of a narrow type of an AC System for a hybrid vehicle. The other references are just claims that Panasonic participated in legitimate trade association meetings without any specific allegations that any conspiratorial activities took place at such meetings. ADP Compl. ¶¶ 173-75; EPP Compl. ¶¶ 188-90.

As for the specific compressor allegations, Plaintiffs allege that Panasonic met with Denso in 2007 relating to a single Nissan RFQ for compressors for the Infinity M Hybrid. ADP Compl. ¶ 172; EPP Compl. ¶ 187. There are no allegations specific to Panasonic that relate to any other parts that go into an AC System and no allegations that Panasonic manufactured or sold any such other parts that go into an AC System, let alone the whole AC System itself. Despite the fact that the Complaints broadly allege an extended AC Systems conspiracy commencing as far back as May 1999, the only specific allegations with respect to Panasonic are solely with respect to this single 2007 RFQ for compressors used in hybrid vehicles.

Apart from the above, Plaintiffs also allege that all Defendants, including Panasonic, attended two trade association meetings in 2007 and 2009, which Plaintiffs refer to as "Nichireiko" meetings. ADP Compl. ¶¶ 173-75; EPP Compl. ¶¶ 188-90. "Nichireiko" is a Japanese abbreviation used by the "Nihon Reitou Kuchou Kogyo Kai," or in English, the Japan Refrigeration Air-Conditioning Industry Association ("JRAIA"), a publicly known trade organization relating to the broader refrigeration and air conditioning industry.[4] *See* Request for

---

[4] each of these actions, which have been approved by this Court. *See* Order Granting End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Panasonic Defendants and Provisional Certification of Settlement Classes, 13-cv-01303, ECF No. 46 (Apr. 10, 2015). None of the parts at issue in the plea agreement and the other civil actions against Panasonic relate to AC Systems or any of the component parts at issue in this case.

[4] The Japanese-language version of JRAIA's website includes multiple instances where JRAIA refers to itself as "Nichireiko" or "=日冷工" as an abbreviation for "Nihon Reitou Kuchou Kogyo Kai." Request for Judicial Notice, Exhibits 1-2, (JRAIA "Home" webpage and lecture

Judicial Notice, Exhibits 1-4 (attaching the Japanese- and English-language versions of the JRAIA website).  Plaintiffs do not allege that Panasonic or any of the other participants at either of these legitimate trade association meetings reached any anticompetitive agreements.  Rather, Plaintiffs simply state that at one of the two meetings, representatives from some of the defendants "discussed, among other things, the general Air Conditioning Systems market and the status of their respective companies' negotiations with OEMs."  ADP Compl. ¶¶ 173-75; EPP Compl. ¶¶ 188-90.  As for the second meeting, Plaintiffs allege nothing beyond the fact that it purportedly occurred.  ADP Compl. ¶ 175; EPP Compl. ¶ 190.  There are no other allegations concerning the conduct of Panasonic in the Complaints.

Significantly, there is no claim that Panasonic entered into any U.S. plea agreement, or has ever been charged by the Department of Justice, with respect to any alleged conspiracy regarding the sale of any AC Systems or components of AC Systems.

### STANDARD OF LAW

In *Bell Atlantic Corp. v. Twombly,* the Supreme Court emphasized that it is not enough merely to plead a set of facts "consistent with" a claim to relief; there must also be enough "factual enhancement" to "nudge [the] claim[ ] across the line from conceivable to plausible."  550 U.S. 544, 547 (2007).  To conduct this analysis, a court should first identify factual allegations that are

---

announcement).  The English-language version of the JRAIA website explains that it was "originally established in February 1949" and "aims to promote and improve production, distribution and consumption of refrigeration and air conditioning equipment and their applied products, as well as auxiliary devices and components, automatic controls and accessories and thereby contribute to the steady development of Japanese industry and the improvement in people's standard of living."  Request for Judicial Notice, Exhibit 3 ("About JRAIA" webpage).  The Court may take judicial notice of the contents of JRAIA's website.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of terms defined on an organization's website).

entitled to a presumption of truth—that is, those allegations that are more than just legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court should then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 678-79.

This Court has explained that to meet this burden, Plaintiffs "must allege facts creating at least an inference as to each defendant's knowing participation in a conspiracy" and that "[a]llegations that a [d]efendant conspired to fix a particular component part is not enough" to suggest a defendant's participation in a broader conspiracy. *In re Auto. Parts Antitrust Litig.*, 2016 WL 8200512, at *4 ("Consolidation Order"). Rather, Plaintiffs' "factual allegations . . . must show each [d]efendant's understanding of the common purpose of the overarching conspiracy." *Id.* (citing *United States v. Hodges*, 935 F.2d 766, 772-73 (6th Cir. 1991)).

## ARGUMENT

## I.    Plaintiffs Do Not Plausibly Allege that Panasonic Participated in the Claimed Overarching AC Systems Conspiracy

### A.    Plaintiffs Fail to Plausibly Allege an Overarching AC Systems Conspiracy

As an initial matter, Plaintiffs' Complaints do not plausibly allege an overarching AC Systems conspiracy, pursuant to which all the defendant groups reached some global agreement regarding these systems. Indeed, other than conclusory references to an "AC Systems conspiracy," all but one of the specific conduct allegations involving agreements among competitors in the Complaints relate to distinct meetings by different groups of Defendants relating to different component parts, OEMs, RFQs, and time periods.[5] *See, e.g.*, ADP Compl. ¶¶ 166-72; EPP Compl.

---

[5]  As for the single allegation regarding an agreement with respect to "Air Conditioning Systems" instead of a component part, it involved an alleged bilateral agreement between Denso and Calsonic in 2002 related to a single OEM, Fuji Heavy Industries, which manufactures Subaru

¶¶ 181-87.  There are no allegations to plausibly suggest an overarching conspiracy involving AC Systems as a whole by these companies.  Instead, at best, Plaintiffs might be able to plead separate alleged conspiracies against different combinations of defendants for different individual AC System parts.

In this regard, Plaintiffs' allegations of an implausibly broad "AC Systems" conspiracy are similar to their failed attempt to plead a global "Auto Parts" conspiracy involving separate and distinct parts, defendants, OEMs and time periods, which this Court rejected.  *See* Consolidation Order, 2016 WL 8200512 at \*4 (finding that amending the complaints to allege a single conspiracy to rig bids and fix prices of all of the "Auto Parts" would be futile and implausible).  As the Court explained:

> There [were] no allegations in the CACs of deals between makers of different component parts, and no inference [arose] of knowledge outside of each Defendants' own specific deals. There [were] no allegations that Defendants competed for the sales of all eighteen parts. There [were] no allegations to support that each Defendant knew of other Defendants' conduct for other products.

*Id.*  In other words, this Court has already found that it is implausible that a manufacturer of only one or two specific component parts would participate in an overarching conspiracy related to many different parts, or a system combining multiple of certain components, that the manufacturer did not even make or sell.  *See also In re Optical Disk Drive Antitrust Litig.*, 10-md-2143, 2011 WL 3894376, at \*8 (N.D. Cal. Aug. 3, 2011) ("[W]hile there is no rule that a conspiracy to fix prices of both a particular component and the finished product containing that component can never exist or be successfully pleaded, there must be a plausible factual basis for contending that

---

vehicles.  *See* ADP Compl ¶ 170; EPP Compl. ¶ 185.  The Complaints do not allege that any other suppliers, including Panasonic, participated in or had any knowledge of this agreement.

the sellers of the finished products were in fact in conspiracy together with the named defendants.").

The same is true here. Plaintiffs' Complaints "merely advance[] allegations of separate conspiratorial conduct between different Defendants making different parts" and fail to "create an inference of a conscious commitment to a common scheme" by Defendants to fix the prices of AC Systems as a whole or all of the various parts that go into different AC Systems and are manufactured and sold by different companies. Consolidation Order, 2016 WL 8200512, at *4 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 907 (6th Cir. 2009)); *see also Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119, 135 (D. Mass. 2013) ("[T]he mere overlap of some of the defendants in some of the transactions is, own its own, insufficient to establish an overarching agreement"); *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42, 2011 WL 7053807, at *29 (E.D.N.Y. Jan. 4, 2011) (finding "some overlapping parties" insufficient to show that various conspiracies were "formulated pursuant to an overarching scheme"). "What is missing" from Plaintiffs' Complaints "is the 'larger picture' from which inferences of a wider conspiracy can be drawn." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011) (holding that plaintiffs' allegations regarding "certain bilateral agreements" were not sufficient to plausibly allege a broader conspiracy where there was "no allegation of facts supporting the existence of an overall plan to fix prices or that each defendant had knowledge that others were involved in the conspiracy").

Plaintiffs' overbroad use of the term "AC Systems" cannot serve as a substitute for plausible allegations of an overarching conspiracy involving all different types of components that go into different systems that cool the interior environments of vehicles. The factual allegations about the different parts that Plaintiffs include in the Complaints are each distinct and involve

different combinations of competitors.  ADP Compl. ¶¶ 166-72, 191-93; EPP Compl. ¶¶ 181-87, 191-93.  There is no plausible motive alleged for why different defendants making different components would enter into a single conspiracy involving numerous components and products that they did not manufacture or sell.  *See* Consolidation Order, 2016 WL 8200512, at *3 (E.D. Mich. Apr. 13, 2016); *c.f. In re Auto. Parts Antitrust Litig. (Wire Harness II)*, Nos. 14-14451, 14-cv-00107, 2015 WL 10372435 (E.D. Mich. Dec. 30, 2015) (granting summary judgment where defendant did not manufacture or sell wire harnesses to be installed in "Trucks and Equipment" as opposed to cars); *In re Auto. Parts Antitrust Litig. (Wire Harness III)*, Nos. 14-14451, 14-cv-00107, 2015 WL 10372437, at *5 (E.D. Mich. Dec. 30, 2015) ("The absence of any factual allegation connecting [defendants'] conduct to the Trucks & Equipment market differentiates this set of allegations").

It is also nonsensical to define "AC System" as an overall cooling system and simultaneously as each of its components parts, many of which are sold for other systems as well.[6] *See* Consolidation Order, 2016 WL 8200512, at *3-*4 ("The use of the term "Auto Parts Market" is an attempt to suggest that auto parts are interchangeable when they are not."); *see also PSKS, Inc. v. Leegin Creative*, 615 F.3d 412, 418 (5th Cir. 2010) (finding "women's accessories" too broad and vague); *Felder's Collision Parts, Inc. v. Gen. Motors Co.*, 960 F. Supp. 2d 617, 628 (M.D. La. 2013) (finding "collision replacement parts" too broad).  Indeed, Plaintiffs' overbroad definition is belied by other complaints in this MDL, such as the Heater Control Panels complaints, which specifically include "control panels"—one of the components also included in Plaintiffs' definition of AC Systems.  ADP Compl. ¶ 4 n.1; EPP Compl. ¶ 1 n.1.  But Plaintiffs concede that

---

[6] For example, Plaintiffs include a diagram listing "Air Conditioning Systems" as distinct from "compressors" as distinct from "fan motors."  ADP Compl. ¶ 146; EPP Compl. ¶ 161.

they have no basis to allege "one overarching conspiracy involving Air Conditioning Systems and Heater Control Panels." ADP Compl. ¶ 4 n.1; EPP Compl. ¶ 1 n.1. The same conclusion must be reached with respect to Plaintiffs' ill-fated attempt to join together in these Complaints all of the other components of an AC System, as well as the overall AC System itself.

### B.   Plaintiffs Fail to Allege that Panasonic Knowingly Joined an Overarching AC Systems Conspiracy

Even if this Court were to find that an overarching AC Systems conspiracy was plausible with respect to some defendants who sold more AC System parts than Panasonic or who sold entire AC Systems, Plaintiffs' Complaints do not plausibly allege facts capable of showing that Panasonic knowingly joined in any such overarching AC Systems conspiracy with any of the other seven defendant groups.

*First*, the sole specific conduct allegation in the Complaints relating to Panasonic asserts only that Panasonic reached an agreement with Denso regarding a specific type of compressor for a single RFQ in 2007 relating to hybrid vehicles made by Nissan. ADP Compl. ¶ 172; EPP Compl. ¶ 187. This is "not enough" to plausibly support an inference that Panasonic joined a broader conspiracy. Consolidation Order, 2016 WL 8200512, at *4. None of the allegations in the Complaints relating to meetings about other component parts, other manufacturers, and other RFQs contain any allegations that Panasonic participated in such meetings or agreements, which is not surprising, as Panasonic did not make or sell many of these component parts.[7] *See id.* (explaining the examples of "separate conspiratorial conduct between different Defendants making different parts" did not "create an inference of a conscious commitment to a common scheme" but

---

[7] Indeed, there are no specific allegations that Panasonic entered any agreements with the single defendant, Valeo, that entered a plea regarding AC Systems or that Panasonic had knowledge of Valeo's alleged conduct.

at most "suggest conspiracies are multiple, separate, and product-specific").  Nor are there any allegations that Panasonic competed for the sales of any other component part or AC Systems as a whole.  *See id.* ("'[P]rice-fixing by means of bid-rigging is flatly impossible when the alleged conspirators are not also competitors.'") (quoting *United States v. Ashland-Warren, Inc.*, 537 F. Supp. 433, 443-44 (M.D. Tenn. 1982)).

**Second**, Plaintiffs' allegations regarding Panasonic's purported participation in two publicly known trade association meetings are also insufficient to make the implausible allegation that Panasonic participated in an overarching AC Systems conspiracy.  It is well-settled that trade association meetings are not, in and of themselves, plausible evidence of a conspiracy in restraint of trade.  *See* T. Vakerics, *Antitrust Basics*, § 6.13 (1985); *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy."); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("As the Supreme Court has recognized . . . trade associations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services.") (citing *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567 (1925); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1256-60 (W.D. Wash. 2009) (holding that allegations of information exchanges through trade associations were insufficient to plead a violation of the Sherman Act).  This is especially true where, as here, Plaintiffs have not alleged that the participants at the JRAIA meetings engaged in any specific anticompetitive agreements relating to AC Systems or even any specific AC System

parts.  As a result, Plaintiffs' allegations regarding these industry meetings fail to plausibly support an inference that Panasonic joined or participated in any overarching AC System conspiracy.[8]

*Finally*, the Complaints here differ from the complaints in this MDL that have been allowed to proceed past a motion to dismiss, where there were specific allegations that the defendants manufactured, competed, and conspired with respect to multiple products that were the subject of the alleged conspiracy.  *See, e.g.*, *In re Auto. Parts Antitrust Litig. (OSS)*, 50 F. Supp. 3d 869, 881 (E.D. Mich. 2014) (complaints included specific allegations that defendants manufactured and competed for multiple system parts, including steering wheels, air bags, and seat belts, and conspired with respect thereto); Opinion and Order, *In re Auto. Parts Antitrust Litig. (Fuel Injection Systems)*, No. 2:12-cv-2203 (E.D. Mich. Jan. 19, 2016), ECF No. 176 (complaints included specific allegations that Keihin participated in multiple agreements regarding multiple system products, including fuel injectors and electronic throttle bodies); *see also In re Auto. Parts Antitrust Litig. (Wire Harness I)*, Nos. 12-cv-00101, 12-cv-00103, 2013 WL 2456585 (E.D. Mich. Jun. 6, 2013) (allegations in the complaints about the alleged conspiracy mirrored the admissions of multiple defendants' guilty pleas involving the products covered by the alleged conspiracy).

<u>**CONCLUSION**</u>

For the reasons stated above, Panasonic respectfully requests the Court enter an order dismissing Plaintiffs' Consolidated Amended Class Actions Complaints as to Panasonic in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(6).  If Plaintiffs believe they can plead

---

[8] Plaintiffs also fail to plausibly explain how Panasonic came to an agreement with defendant Behr or Showa Denko—neither of whom was alleged to have attended either group meeting, and neither of whom are alleged to make or sell the same AC System part as Panasonic.  *See* ADP Compl. ¶¶ 168-70, 173-75; EPP Compl. ¶¶ 184-86, 188-90.

12

a claim against Panasonic related solely to the alleged RFQ discussion with Denso regarding compressors for Nissan's hybrid vehicle, it should be required to do so in a separate complaint.

Dated:  June 5, 2017

Respectfully submitted,

*/s/  Jeffrey L. Kessler*
Jeffrey L. Kessler
Eva W. Cole
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-4685 (Telephone)
(212) 294-4700 (Facsimile)
jkessler@winston.com
ewcole@winston.com
jamato@winston.com

Brandon W. Duke
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (Telephone)
(713) 651-2700 (Facsimile)
bduke@winston.com

*Counsel for Panasonic Corporation and*
*Panasonic Corporation of North America*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2017, **PANASONIC DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brandon W. Duke*